# In the United States Court of Federal Claims

No. 98-488C
Filed July 30, 2004
**TO BE PUBLISHED**

| | | |
|---|---|---|
| SACRAMENTO MUNICIPAL UTILITY DISTRICT, Plaintiff, v. THE UNITED STATES, Defendant. | * | Just Compensation Clause; Nuclear Waste Policy Act, 42 U.S.C. §§ 10101 *et seq.*; RCFC 12(b)(6). |

**Melvin C. Garbow**, **Howard N. Cayne, and Edward H. Sisson,** Arnold & Porter, LLP, Washington, D.C., counsel for plaintiff.

**Russell Alan Shultis**, United States Department of Justice, Civil Division, Commercial Litigation Branch, counsel for defendant.

## MEMORANDUM OPINION AND ORDER

**BRADEN,** ***Judge***

## FACTUAL BACKGROUND[1]

Plaintiff, Sacramento Municipal Utility District ("SMUD") is a municipal utility district that operated the former Rancho Seco Nuclear Generating Station Unit 1 ("Rancho Seco"), a nuclear-powered plant located near Sacramento, California. *See* Compl. at ¶ 4. In 1982, the Nuclear Waste Policy Act, 42 U.S.C. §10101 *et seq*. ("NWPA") was enacted establishing the duty of the federal

[1] The facts discussed herein are derived from the June 9, 1998 Complaint ("Compl."). References are made to the Government's November 27, 2001 Motion to Dismiss Counts IV and V ("Gov. Mot."); plaintiff's December 16, 2002 Response in Opposition ("Pl. Opp."); and the Government's January 31, 2003 Reply ("Gov. Reply").

government to remove spent nuclear fuel ("SNF")[2] from utilities across the country. *See* 42 U.S.C. § 10131(a)(4), (b)(2); Compl. at ¶ 17. In 1983, a Standard Contract was developed by the Department of Energy ("DOE") to establish fee amounts to be paid by utilities into the Nuclear Waste Fund, which was to be used to fund removal of SNF. *See* 42 U.S.C.§ 10131(a)(5), (b)(4); Compl. at ¶ 18. This Standard Contract provides that the DOE must dispose of the SNF, as of January 31, 1998, with priority given to nuclear reactors that are no longer operating. *See* Compl. at ¶¶ 20-21, 24. SMUD signed the Standard Contract on June 14, 1983. *Id.* at ¶ 23.

On June 7, 1989, SMUD permanently shut down Rancho Seco. *See* Compl. at ¶ 4. On July 7, 1992, SMUD began the process of constructing an Independent Fuel Storage Installation ("ISFSI") or dry storage facility at Rancho Seco where SNF would be stored until removed by DOE. *See* Compl. at ¶ 33. The ISFSI at Rancho Seco is located 1700 hundred feet from the existing licensed "wet" storage facility, where the SNF currently is stored. *Id.* On September 25, 1992, SMUD contracted for the design, licensing, and construction of stainless steel casks and canisters to encase the SNF at the ISFSI. *Id.* at ¶ 46. Until the ISFSI is completed and licensed, the SNF will be stored in the "wet" storage facility. *Id.* To date, DOE has not collected any SNF from SMUD's storage site. *Id.* at ¶ 48. As of January 31, 1998, SMUD had paid $39,892,283 into the Nuclear Waste Fund for those services. *Id.* at ¶¶ 23-28.

## PROCEDURAL HISTORY

On June 9, 1998, SMUD filed a complaint in the United States Court of Federal Claims alleging breach of contract claims (Counts I and II), an illegal exaction claim (Count III), and Just Compensation claims (Counts IV and V). The case was assigned to the Honorable Robert J. Yock. On September 26, 2001, the case was assigned to the Honorable Diane G. Sypolt for consolidated discovery with the other SNF cases. On November 27, 2001, the defendant ("Government") moved to dismiss Counts IV and V for failure to state a claim. *See* Gov. Mot. On December 13, 2000, the Government moved to dismiss Count III. On December 16, 2002, SMUD responded, indicating that it did not oppose the Government's motion to dismiss Count III, but argued that the claims asserted under the Fifth Amendment to the United States Constitution in Counts IV and V were viable. *See* Pl. Opp. at 1. On January 31, 2003, the Government filed a reply. *See* Gov. Reply. On April 17, 2003, the case was reassigned to the Honorable Emily C. Hewitt. On August 15, 2003, the case was reassigned to the undersigned judge.

---

[2] SNF, a by-product of the nuclear energy process, "remains radioactive after it is removed from a nuclear reactor and must be isolated in safe disposal facilities for thousands of years." Compl. at ¶ 15.

## DISCUSSION

### A. Jurisdiction.

The Tucker Act conveys "jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1) (2000). The Tucker Act, however, is only a "jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages." *United States* v. *Testan*, 424 U.S. 392, 398 (1976). Therefore, in order to pursue a substantive right, plaintiff "must assert a claim under a separate money-mandating constitutional provision, statute, or regulation, the violation of which supports a claim for damages against the United States." *James* v. *Caldera,* 159 F.3d 573, 580 (Fed. Cir. 1998). Here, for the purposes of the order, plaintiff has properly alleged a money-mandating provision of the United States Constitution. *See* Compl. at ¶¶ 66-73.

### B. Standard Of Review.

#### 1. Motion For Failure To State A Claim – RCFC 12(b)(6).

When deciding a motion to dismiss for failure to state a claim, the court must assume that all undisputed facts alleged in the complaint are true and draw all reasonable inferences in the non-movant's favor. *See Brubaker Amusement Co., Inc.* v. *United States*, 304 F.3d 1349, 1355 (Fed. Cir. 2002) ("A plaintiff fails to state a claim upon which relief may be granted if the plaintiff cannot assert a set of facts that would support its claim. [In the context of a motion to dismiss for failure to state a claim], all well-pled factual allegations are true and . . . all reasonable inferences [are drawn] in favor of the nonmovant.") (citations omitted).

#### 2. SMUD's Just Compensation Claims.

Private property shall not be taken for "public use, without just compensation." U.S. Const. amend. V, cl. 4. The purpose of the Just Compensation Clause is to prevent the federal government "from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Armstrong* v. *United States*, 364 U.S. 40, 49 (1960). The United States Court of Appeals for the Federal Circuit has observed that whether a constitutional taking has occurred is a question of law based on "factual underpinnings." *Cienega Gardens* v. *United States*, 331 F.3d 1319, 1328 (Fed. Cir. 2003). To assist the court in conducting the required analysis, a two-part test has been established: 1) "a court must evaluate whether the claimant has established a 'property interest' for the purposes of the Fifth Amendment;" and 2) the court "must determine whether a taking occurred." *Maritrans, Inc.* v. *United States*, 342 F.3d 1344, 1351 (Fed. Cir. 2003).

The United States Supreme Court has held that property rights are determined by "existing rules or understandings that stem from an independent source such as state law." *Board of Regents*

*of State Colleges* v. *Roth*, 408 U.S. 564, 577 (1972). Once a property right is identified, the court next must decide the nature of the taking, *i.e.*, whether the case presents a "classi[c] taking" in which the government "directly appropriates private property for its own use." *Eastern Enterprises* v. *Apfel*, 524 U.S. 498, 522 (1998) (quoting *United States* v. *Security Indus. Bank*, 459 U.S. 70, 79 (1982)) or whether the "interference arises from some public program adjusting the benefits and burdens of economic life to promote the common good." *Penn Central Transp. Co.* v. *New York*, 438 U.S. 104, 124 (1978).

The genesis of "regulatory takings" jurisprudence was Justice Holmes' opinion in *Pennsylvania Coal Co.* v. *Mahon*, 260 U.S. 393 (1922), in which the rhetorical, but substantively unhelpful dicta appears: "[I]f a regulation goes too far it will be recognized as a taking." *Id.* at 415. Consequently, the United States Supreme Court has struggled over the last 82 years to provide meaningful context to what is "too far" by adopting and building on what it has described as an *"ad hoc"* analysis. *See Penn Central,* 438 U.S. at 124; *see also id.* at 130-31 ("[T]his Court focuses . . . on the character of the action and on the nature and extent of the interference with rights in the parcel as a whole[.]"). Where a taking is less than total, the lower courts have been instructed that the *Penn Central* analysis is the "proper framework." *Tahoe-Sierra Pres. Council, Inc.* v. *Tahoe Reg'l Planning Agency*, 535 U.S. 302, 331 (2002). In rejecting a variety of "categorical" rules, the Supreme Court nevertheless conceded that "the duration of the restriction is one of the important factors that a court must consider in the appraisal of a regulatory takings claim, but with respect to that factor as with respect to other factors, the 'temptation to adopt what amount to *per se* rules in either direction must be resisted.'" *Id.* at 321 (quoting *Palazzolo* v. *Rhode Island*, 533 U.S.606, 636 (2001) (O'Connor, J.) (concurring)).

**C. Resolution Of Government's Motion To Dismiss.**

**1. Count IV- Taking Of "Vested Contract Rights" Claim.**

The complaint alleges that SMUD's "vested contract rights" are a constitutionally protected property interest. *See* Compl. at ¶¶ 66-67. The United States Supreme Court has recognized that "[c]ontract rights are a form of property and as such may be taken for a public purpose provided that just compensation is paid." *United States Trust Co. of N.Y.* v. *New Jersey*, 431 U.S. 19, n.16 (1977); *see also Cienega Gardens* v. *United States*, 331 F.3d 1319, 1328-31 (Fed. Cir. 2003) (holding that plaintiffs may have a property interest in vested contractual rights).

The complaint also alleges that SMUD's "vested contract rights" were "taken" by the Government's failure to commence disposing of the SNF at the Rancho Seco site on January 31, 1998 and its continuing failure to dispose of such SNF. *See* Compl. at ¶¶ 66-68. The United States Court of Appeals for the Federal Circuit has held that "governmental interference with contractual rights does not necessarily constitute a taking of property." *Brubaker Amusement Co. Inc.* v. *United States*, 304 F. 3d 1349, 1356 (Fed. Cir. 2002); *see also Connolly* v. *Pension Benefit Guar. Corp.*, 475 U.S. 211, 223-24 (1986) ("Contracts, however express, cannot fetter the constitutional authority of Congress [and] the fact that legislation disregards or destroys existing contractual rights does not

always transform the regulation into an illegal taking."). Thus, the court has been instructed that it should be cautious before "commingling takings compensation and contract damages . . . [since] the concept of a taking as a compensable claim theory has limited application to the relative rights of party litigants when those rights have been voluntarily created by contract. In such instances, interference with such contractual rights generally gives rise to a breach [of contract] claim not a taking claim." *Hughes Communications Galaxy, Inc.* v. *United States*, 271 F.3d 1060, 1070 (Fed. Cir. 2001) (quoting *Sun Oil Co.* v. *United States,* 572 F.2d 786, 818 (1978)). Moreover, our appellate court has observed that taking claims "rarely arise under government contracts because the Government acts in its commercial or proprietary capacity in entering contracts, rather than in its sovereign capacity." *Id.* at 1070. None of these cases, however, were resolved on a Rule 12(b)(6) motion, but after a full factual record was established.

SMUD does not contest that the Government's "failure to perform under a contract generally does not give rise to a taking[.]" Pl. Opp. at 14. Instead, SMUD explains that 1987 Amendments to the NWPA diminished SMUD's contract remedies because of the SNF tonnage limitations that DOE may "accept," which gives rise to a cognizable takings claim. *Id.* at 14-15.[3] Although this may be so, this regulatory taking theory is not set forth in ¶¶ 60-65 of the Complaint. Since the United States Supreme Court repeatedly advised the lower courts that regulatory takings analysis is "ad hoc and fact intensive," however, it would be premature to dismiss SMUD's regulatory takings claim at this juncture, particularly since discovery only recently has commenced and the court has not engaged in any fact finding. *See Eastern Enterprises*, 524 U.S. at 523. It is also premature to dismiss this claim because, as a threshold matter, the "economic impact" of the statute, whether it interfered with "reasonable investment backed expectations," and the "character of the governmental action" must be analyzed to determine whether a taking has occurred. *See Penn Central*, 438 U. S. at 124; *see also Yee* v. *Escondido*, 503 U.S. 519, 523 (1992) (observing that regulatory taking cases "necessarily entai[l] complex factual assessments of the purpose and economic effects of government actions."). In addition, the process for evaluating a statute or regulation's constitutionality "involves an examination of the 'justness and fairness' of the governmental action" and that record has not yet been made. *See Kaiser Aetna* v. *United States*, 444 U.S. 164, 175 (1979).

Accordingly, in the interest of justice, SMUD is granted 30 days to amend the June 9, 1998 Complaint to articulate the regulatory takings claim discussed in the December 16, 2002 Response at 15 and properly allege the threshold elements discussed above. The Government's motion to dismiss as to Count IV is denied.

---

[3] The 1987 Amendments limit DOE's authority to accept no more than 10,000 tons of SNF prior to the operation of a repository site to store the SNF. *See* 42 U.S.C. § 10168(d)(3). This is a reduction in DOE's original obligation to dispose of up to 3,000 tons of SNF per year, as of January 31, 1998, until all the SNF has been disposed. *See* Compl. (Standard Contract Art. II).

**2. Count V- Taking Of Real Property Claim.**

The complaint also alleges that the Government's breach has "forced SMUD to devote economically valuable real property to the storage of the SNF in the ISFSI. The government has taken this real property by denying SMUD its rights as owner of this property to put it to other valuable economic uses." Compl. at ¶ 72; *see also id.* at ¶¶ 71-73. Real property is constitutionally protected. *See Cienega Gardens*, 331 F.3d at 1328-31 (holding that plaintiffs may have a property interest in real property). Therefore, taking these allegations as true, SMUD properly has alleged a constitutionally protected property interest in Rancho Seco.

Where federal governmental action deprives a property owner of "*all* economically beneficial uses," a taking has occurred. *See Lucas* v. *South Carolina Coastal Council*, 505 U.S. 1003, 1019 (1992) (emphasis added). Notwithstanding the sweeping allegations in the complaint, *see* Compl. at ¶¶ 71-73, and SMUD's argument that "the government has deprived SMUD of the full economic value of its Rancho Seco property[,]" SMUD appears to concede that the extent of the Government's action, in fact, only has "restricted," "delayed the timely decommissioning of that facility[,]" and "prevented the use of the property for other, more economic purposes." *See* Pl. Opp. at 6. Therefore, *ipso facto*, Rancho Seco appears to retain some "viable economic use." Again, where a statute or regulation "places limitations on land that fall short of eliminating all economically beneficial use, a taking nonetheless may have occurred, depending on a complex of factors including the regulation's economic effect on the landowner, the extent to which the regulation interferes with reasonable investment-backed expectations, and the character of the government action." *Palazzolo* v. *Rhode Island*, 533 U.S. 606, 617 (2001) (citing *Penn Central*, 438 U.S. at 124).

The complaint also alleges a physical taking in that the Government's failure to dispose of the SNF has forced SMUD to store it at Rancho Seco. *See* Compl. at ¶¶ 71-73. The Government argues that since the NWPA provides that title to the SNF at issue will not pass to the DOE until sometime after the commencement of the operation of a permanent repository, there has been no taking, *i.e.*, a physical invasion or occupation of Rancho Seco. *See* Gov. Mot. at 13-14. The court disagrees. As SMUD points out in its argument, where the Government has forced storage on another's private property the Just Compensation Clause is implicated. *See Webb's Fabulous Pharmacies, Inc.* v. *Beckwith*, 449 U.S. 155,164 (1980) ("[A] State by ipse dixit, may not *transform* private property into public property without just compensation.") (emphasis added); *see also City of Monterey* v. *Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 698 (1999) (upholding taking damages where the government engaged in a series of pretextual refusals to allow development over an extended time period); *see generally* Richard A. Epstein, TAKINGS: PRIVATE PROPERTY AND THE POWER OF EMINENT DOMAIN 101 (1985). The precise nature of the Government's conduct remains to be determined at trial. Therefore, for the reasons discussed above, Count V properly alleges facts sufficient to state a takings claim and dismissal is not warranted at this stage of the litigation.

## CONCLUSION

For the aforegoing reasons, the Government's November 7, 2001 motion to dismiss Counts IV and V is denied, the Government's December 13, 2001 motion to dismiss Count III is granted, and SMUD is granted 30 days to amend the June 19, 1998 complaint.

**IT IS SO ORDERED.**

______________________________

**SUSAN G. BRADEN**
**Judge**