LEXSEE 48 FR 5458

DEPARTMENT OF ENERGY

AGENCY: Energy.

10 CFR Part 961

# Standard Contract for Disposal of Spent Nuclear Fuel and/or High Level Radioactive Waste

*48 FR 5458*

February 4, 1983

ACTION: Notice of proposed rulemaking.

SUMMARY: This notice publishes for comment a proposed standard contract to be used by the Department of Energy (DOE) in furnishing disposal services to the owners or generators of spent nuclear fuel and/or high-level radioactive waste and DOE's proposed procedures designed to implement section 302 of the Nuclear Waste Policy Act of 1982. Section 302 generally requires DOE and the owners or generators of spent nuclear fuel and/or high-level radioactive waste to execute, by June 30, 1983, a contract under which DOE will accept and dispose of such material. This rulemaking will have the effect of developing the contractual terms and conditions under which DOE will make available nuclear waste disposal services.

DATES: Written comments must be submitted on or before March 7, 1983. A hearing will be held in Washington, D.C. on March 3, 1983 at 9:30 a.m.

ADDRESS: Written comments and requests to appear at the hearing should be addressed to Robert Morgan, Project Director Nuclear Waste Policy Act Project Office, Department of Energy, 1000 Independence Avenue, S.W., Room 7B-084, Washington, DC 20585, (202) 252-6842.

Comments on the information collection requirements contained in the proposed contract should also be submitted to the Office of Information and Regulatory Affairs, Office of Management and Budget, Washington, DC 20503, Attention: Mr. Jeff Hill.

The hearing will be held in the Forrestal Building, 1000 Independence Avenue, S.W., Room GE-087, the DOE Auditorium.

FOR FURTHER INFORMATION CONTACT:

Robert Rosselli, Office of Terminal Waste Disposal and Remedial Action, Department of Energy, Room 7B-084, Washington, DC 20585, (202) 252-8728.

James Cavanagh, Office of Policy, MA 931.1, Procurement and Assistance, Management Directorate, Department of Energy, Room 8H-057, Washington, DC 20585, (202) 252-8188.

Elliot Winnick, Office of General Counsel, Department of Energy, Room 6B-190, Washington, DC 20585, (202) 252-1526.

**TEXT:** SUPPLEMENTARY INFORMATION:

I. Legislative Background

II. Proposed Rule

III. Comment Procedures

A. Written Comments

B. Public Hearing

IV. Procedural Requirements

A. Executive Order 12291

B. Regulatory Flexibility Act

C. National Environmental Policy Act

D. Paperwork Reduction Act

I. Legislative Background

The Nuclear Waste Policy Act of 1982 (the "Act", Pub. L. 97-425, 96 Stat. 2201 *et seq.,* to be codified at *42 U.S.C. 10101 et seq.,* January 7, 1983), provides a comprehensive framework for disposing of spent nuclear fuel (SNF) and high-level radioactive waste (HLW), of domestic origin, generated by civilian nuclear power reactors. In general, the Act establishes procedures for selecting and developing repositories for SNF and HLW, authorizes the establishment of such repositories, provides a mechanism for financing the cost of disposal of such fuel and waste, and sets forth other provisions relating to nuclear waste disposal.

The key concept in the statutory financing mechanism is that owners and generators of SNF and/or HLW are required to bear the full cost of nuclear waste disposal activities by paying fees into the Nuclear Waste Fund established by the act. This fund, which will be administered by the Secretary of the Treasury, will be used to pay for, among other things, selecting, developing, and constructing repositories, transporting the material, and disposing of it.

More specifically, the fees may be used for the following purposes:

(1) The identification, development, licensing, construction, operation, decommissioning, and post-decommissioning maintenance and monitoring of any repository, monitored, retreivable storage facility or test and evaluation facility constructed under the Act;

(2) The conduct of nongeneric research, development, and demonstration activities under the Act;

(3) The administrative cost of the radioactive waste disposal program:

(4) Any costs that may be incurred by DOE in connection with the transportation, treatment, or packaging of spent nuclear fuel or high-level radioactive waste to be disposed of in a repository, to be stored in a monitored, retrievable storage site, or to be used in a test and evaluation facility;

(5) The costs associated with acquisition, design, modification, replacement, operation, and construction of facilities at a repository site, a monitored, retrievable storage site or a test and evaluation facility site and necessary or incident to such repository, monitored, retrievable storage facility or test and evaluation facility; and

(6) The provision of assistance of States, units of general local government, and Indian tribes under sections 116, 118 and 219 of the Act.

To implement section 302 of the Act, this Federal Register notice proposes a new Part 961 to Title 10 of the Code of Federal Regulations. This new part will consist of the terms and conditions of the contracts which are authorized by the Act and the procedures associated with executing such contracts. The proposed standard contract is more fully described in Section II, Proposed Rule, below.

The proposed standard contract would establish the rights and duties of the U.S. Department of Energy (DOE) and the owners and generators of SNF and HLW. The Act authorizes DOE to enter into contracts with owners or generators of SNF and HLW and strongly encourages these owners and generators to enter into such contracts. The proposed contract terms will cover transfer of title to DOE, transportation, and disposal of civilian SNF and HLW of domestic origin and

procedures for collection and payment of fees for such services, as provided by the Act. Revenues derived from such activities will be deposited into the Nuclear Waste Fund as provided in the Act. The Act directs DOE to begin repository operations no later than January 31, 1998.

Section 302 of the Act contains two provisions which demonstrate the importance which the Act places on this contract. Section 302(b)(1)(A) provides that the Nuclear Regulatory Commission shall not issue or renew a license to any person to use a utilization or production facility under the authority of section 103 or 104 of the Atomic Energy Act of 1954 *(42 U.S.C. 2133,* 2134) unless (1) such person has entered into a contract for DOE's disposal services, or (2) the Secretary of Energy affirms in writing that such person is actively and in good faith negotiating with the Secretary for a contract for those services.

Furthermore, section 302(b)(2) of the Act specifies that, "Except as provided in paragraph [302(b)(1)]", no civilian SNF or HLW may be disposed of by DOE in any repository constructed under the Act unless the owner or generator of that material has entered into a contract for disposal with the Secretary by not later than (1) June 30, 1983, or (2) the date on which the owner or generator takes title to, or begins generation of, such spent fuel or waste, whichever is later. DOE has interpreted the phrase, "except as provided in paragraph 1," to extend to paragraph 2 the provision which allows the Secretary to affirm in writing that an owner or generator is actively negotiating in good faith. Accordingly, while this affirmation is in effect, application of paragraph 2, which precludes disposal of SNF or HLW in the absence of a timely executed contract, is deferred. In other words, DOE is interpreting section 302(b)(2) of the Act to mean that the June 30, 1983 deadline for executing a contract does not apply if the Secretary affirms in writing that the owner or generator is actively and in good faith negotiating a contract for DOE's disposal services.

DOE determined that it would be most appropriate to develop this proposed standard contract through rulemaking because this process presents the best opportunity for interested persons, particularly the affected parties, to participate in developing the standard contract which will be used in DOE's nuclear waste disposal activities. Although DOE recognizes that some situations may require special contractual provisions, DOE intends to develop and use, to the maximum extent practicable, a standard contract to specify the rights and duties of the parties.

II. Proposed Rule

The purpose of this new Part 961, as indicated in § 961.1, is to establish a standard contract that will be used to provide DOE's nuclear waste disposal services to a Purchaser. The term "Purchaser" is defined in § 961.3.

Proposed § 961.2 relates to applicability and describes who is covered by the part. A critical feature of this section is that to have SNF or HLW disposed of in DOE's repository, an owner or generator of such nuclear fuel or waste must execute a contract with DOE by June 30, 1983, or by the date on which an owner or generator begins generating or takes title to such fuel or waste. In DOE's interpretation, section 302(b)(2) of the Act allows these deadlines to be waived if the Secretary of Energy affirms in writing that the owner or generator is actively and in good faith negotiating for a contract covered by this part.

Proposed § 961.3 sets forth pertinent definitions and incorporates the more extensive list of definitions contained in Article II of the contract which is found in § 961.11.

Proposed § 961.4 provides for deviations from the proposed rule as well as from the contract which is found at § 961.11. DOE has included this provision because special circumstances may exist or arise that would warrant a departure from the rule or standard contract. As mentioned above, however, DOE intends to use the rule and standard contract unless special circumstances are found and the proposed deviation procedures are followed.

Proposed § 961.5 specifies that Federal agencies which require DOE's nuclear waste disposal services shall enter into an interagency agreement which commits those agencies to the terms and conditions, including the fee schedules, contained in the proposed standard contract.

Proposed § 961.11 sets forth the standard contract that DOE and owners and generators of SNF and/or HLW will execute for the disposal of such fuel or waste, as follows:

*Recitals —* Identifies the signatory parties, sets forth the underlying purposes of the contract, and cites the pertinent statutory authorities.

*Article I — Definitions —* Gives definitions for the terms used in the contract. Wherever possible, definitions contained

in Section 2 of the Act are used in the contract.

*Article II — Scope —* Provides that the contract is for the sale of disposal services by DOE to a Purchaser. DOE will accept SNF and/or HLW from civilian nuclear power reactors and begin disposing of it before January 31, 1998. In exchange for these services, Purchasers will pay fees established in the contract.

*Article III — Term —* Specifies that the contract will take effect upon execution and will continue until DOE has accepted all SNF and/or HLW from Purchaser.

*Article IV — Delivery of SNF and/or HLW —* Sets forth the procedures to be followed by Purchaser, including the requirement that the Purchaser describe the waste material to be delivered to DOE, the furnishing of a delivery commitment schedule 63 months prior to the specified delivery date, and a final delivery schedule which Purchaser submits 12 months prior to delivery. In case of an emergency DOE may, subject to prior approval, accept a Purchaser's waste material before the scheduled delivery date.

*Article V — Responsibilities of the Parties —* Sets forth the Purchaser's obligations, including the furnishing of an annual forecast of delivery, preparation for transportation of the SNF and/or HLW to be delivered; and DOE's obligations including reviewing Purchaser's delivery commitment schedules, providing all necessary transportation of the SNF and/or HLW to the DOE disposal facility, issuing an annual acceptance ranking for receipt of such waste material, and providing pertinent information to Purchaser on DOE's waste disposal program.

*Article VI — Criteria for Disposal —* Sets forth the requirement for accurate and detailed technical descriptions of the fuel to be provided to DOE by the Purchaser. DOE will verify the Purchaser's information prior to acceptance. If DOE determines, either prior to or subsequent to acceptance, that the Purchaser has improperly described spent fuel and waste, the Purchaser is required to take specified corrective measures.

*Article VII — Title —* Title to all SNF and/or HLW will pass to DOE when DOE accepts the spent fuel or waste, in accordance with Article VI, for transportation to DOE's repository. After title passes, the Purchaser has no rights to the spent fuel or waste and no claims against the Government related to it.

*Article VIII — Fees and Terms of Payment —* The fees to be paid by Purchaser are specified, including a fee for electricity generated on or after April 7, 1983 (one mil per kilowatt hour) and a one-time fee for fuel used prior to April 7, 1983. The method of paying fees is described and there are provisions for interest charges on late or unpaid fees.

There are three alternatives for the calculation of the one-time fee for existing spent fuel other than the method provided in Article VIII of the contract. The other three alternatives are as follows:

(1) Determining the average burnup of all discharged fuel prior to April 7, 1983, calculating the dollar per kilogram for that average burnup equivalent to one mil per kilowatt hour, and applying that dollar per kilogram charge to all discharged fuel; or

(2) Using the following formula, calculate the fees to be paid by the Purchaser under this contract:

[See Equation in Original]
or .008 (X)=$ — — — ,

Kg

where X=the burnup of each assembly in MWth Days

MTU

a. Fuel Burnup data is used to determine a dollar per kilogram of heavy metal that is equivalent to one (1) mil per Kilowatt-hour.

b. The calculation shall be done on an individual assembly basis.

(3) Categorizing discharged fuel with less than 10,000 MWD/ton burnup as abnormal fuel and subjecting the cost for disposal of that fuel to the 1 mil/kilowatt-hour equivalent charge and subjecting the residual discharged fuel to an average

dollar/KG charge such that the total fees collected are equivalent to 1 mil/kilowatt-hour.

*Article IX — Delays —* In the event of unavoidable delays by either party, notice is required; if the delays are avoidable, the party not responsible therefor is compensated by an adjustment to applicable charges and schedules.

*Article X — Suspension —* If the Purchaser fails to fulfill its contractual obligation, DOE may discontinue services, although the fee requirements will continue. If there is a national emergency, the DOE may suspend the waste disposal program, in which event for payments will be abated or adjusted.

*Article XI — Remedies —* Expressly states that both parties are not precluded from asserting their rights under the contract or at law.

*Article XII — Notices —* Specifies the persons to whom and the manner in which notification required under the contract must be given.

*Article XIII — General Provisions —* Incorporates by reference Appendix H which contains general terms and conditions required in Government contracts.

*Article XIV — Representation Concerning Nuclear Hazards Indemnity —* Provides for indemnity agreements to be issued under the authority of the Atomic Energy Act of 1954, as amended, which will indemnify covered persons, including the Purchaser, against claims for public liability as defined in that Act in the event of nuclear incidents arising during transportation or at the repository site.

*Article XV — Assignment —* Provides, in accordance with the Act, that the Purchaser may assign its rights and duties under the contract, including the payment of fees, upon transfer of title to SNF and/or HLW, subject to notice to DOE.

*Article XVI — Entire Contract —* Identifies the contents of the contract (Articles I through XVI and Appendices "A" through "H"), and specifies that any and all prior contracts and representations with respect to the subject matter covered in the contract are superseded.

III. Comment Procedures

A. *Written Comments.* Interested persons are invited to participate in this proposed rulemaking by submitting information, views, or proposed changes. Comments should be submitted no later than March 7, 1983 to the address indicated in the "ADDRESS" section of this notice and should be identified on the outside envelope and on the document with the designation: "Contract for Disposal of Spent Nuclear Fuel and/or High-Level Radioactive Waste". Ten copies should be submitted.

All comments received will be available for public inspection in the DOE Reading Room, Room 1E-190, James Forrestal Building, 1000 Independence Avenue, SW., Washington, D.C. 20585, between the hours of 8:00 a.m. and 4:00 p.m., Monday through Friday, except Federal holidays. Comments on the information collection requirements contained in the proposed contract should also be submitted to the Office of Information and Regulatory Affairs, Office of Management and Budget, Washington, D.C. 20503, Attention: Mr. Jeff Hill.

Any information or data considered confidential by the person furnishing it must be so identified and submitted in writing. DOE reserves the right to determine the confidential status of the information or data and to treat the information or data in accordance with its determination.

B. *Public Hearing.* A public hearing will be held on March 3, 1983 at 9:30 a.m. in the DOE Auditorium, Room GE-087, the Forrestal Building, 1000 Independence Avenue, SW., Washington, D.C. 20585. Requests to make an oral presentation at the hearing should be addressed to Robert Morgan, Project Director, Waste Policy Act Project Office, Department of Energy, Room 7B-084, Washington, D.C. 20585, (202) 252-6842, and should include a phone number where the requester may be contacted through the day before the hearing.

DOE reserves the right to limit the number of persons to be heard at the hearing, to schedule their presentations, and to establish the procedures governing the conduct of the hearing. The length of each presentation may be limited, based on the number of persons requesting to be heard.

Persons scheduled to appear at the hearing will be notified by DOE before 4:30 p.m. on February 23, 1983. You should submit 10 copies of your statement to the address given above for requests to speak before 4:30 p.m. on February

25, 1983.

A DOE official will be designated to preside at the hearing, which will not be adjudicative in nature.

Any further procedural rules required for the proper conduct of the hearing will be announced by the presiding officer.

Transcripts of the hearing will be made and the entire record of the hearing, including the transcripts, will be retained and made available for public inspection at the DOE Reading Room, Room 1E-190, Forrestal Building, 1000 Independence Avenue, SW., Washington, DC between the hours of 8:00 a.m. and 4:00 p.m., Monday through Friday, except Federal holidays. Any person may purchase a copy of the transcript from the reporter.

IV. Procedural Requirements

A. *Executive Order No. 12291.* Under Executive Order 12291 agencies are required to determine whether proposed rules are major rules as defined in the Order. DOE has reviewed this proposed rule and, after consultation with the Office of Management and Budget, has determined that it is not a major rule because: it will not have an annual effect on the economy of $100 million or more; it will not result in a major increase in costs or prices for consumers, individual industries, Federal, State, or local government agencies, or geographic regions; and it will not have significant adverse effects on competition, employment, investment, productivity, innovation, or on the ability of United States-based enterprises to compete with foreign-based enterprises. While the money to be paid by members of the electric utility industry under the contracts that are the subject of this rule will exceed $100 million annually, and may even be considered a major cost to the industry, these costs would not be the result of this rule. The costs are the result of the need to dispose of spent nuclear fuel and/or high-level radioactive waste, a need recognized in the Nuclear Waste Policy Act of 1982. The particular provisions of this rule have little impact on the actual costs of disposal and certainly less than $100 million annually.

B. *Regulatory Flexibility Act.* In accordance with section 605(b) of the Regulatory Flexibility Act, *5 U.S.C. 601, et seq.*, DOE finds that sections 603 and 604 of the said Act do not apply to this rule because, if promulgated, it will not have a significant economic impact on a substantial number of small entities. This finding is based on the fact that the parties to the contract, who will be owners or generators of spent nuclear fuel or high-level radioactive waste, are not small entities.

C. *National Environmental Policy Act.* Execution of the standard contract proposed in this rulemaking will not commit DOE to any specific activities not already prescribed by the Nuclear Waste Policy Act. Activities allowed under the Act will receive appropriate environmental review at the proper time, i.e., when such activities are proposed in accordance with the process established in the Act. Therefore, DOE has concluded that neither the proposed rulemaking nor the execution of the contracts gives rise to any action not already prescribed by the Act and, thus, is not a proposal for a major Federal action significantly affecting the quality of the human environment. Accordingly, preparation of either an environmental assessment or an environmental impact statement is not required.

D. *Paperwork Reduction Act.* In accordance with Section 3504(h) of the Paperwork Reduction Act of 1980 (Pub. L. 96-511), this proposed rule has been submitted to the Office of Management and Budget (OMB). Comments on the information collection requirements of this proposal should be submitted to both DOE and OMB as indicated in Section III.

List of Subjects in 10 CFR Part 961

Government contracts, Nuclear materials, Nuclear power plants and reactors, Radiation protection, Waste treatment and disposal.

For the reasons set out above, a new Part 961 of Chapter III of Title 10, Code of Federal Regulations, is proposed to be established as set forth below.

Issued in Washington, DC, January 31, 1983.

Hilary J. Rauch,

Director, Procurement & Assistance Management Directorate.

48 FR 5458

Title 10, Chapter III of the Code of Federal Regulations is proposed to be amended by adding a new Part 961, to read as follows:

PART 961 — STANDARD CONTRACT FOR DISPOSAL OF SPENT NUCLEAR FUEL AND/OR HIGH-LEVEL RADIOACTIVE WASTE

Subpart A — General

Sec.

961.1 Purpose.

961.2 Applicability.

961.3 Definitions.

961.4 Deviations.

961.5 Federal agencies.

961.6 [Reserved]

961.7 [Reserved]

961.8 [Reserved]

961.9 [Reserved]

961.10 [Reserved]

Subpart B — Standard Contract for Disposal of Spent Nuclear Fuel and/or High-Level Radioactive Waste

961.11 Text of the contract.

Authority: Section 644, Pub. L. 95-91, 91 Stat. 599 *(42 U.S.C. 7254)* and Sec. 302, Pub. L. 97-425, 96 Stat. 2257 (to be codified at *42 U.S.C. 10222).*

Subpart A — General

§ 961.1 Purpose.

This part establishes the contractual terms and conditions under which the Department of Energy (DOE) will make available nuclear waste disposal services to the owners and generators of spent nuclear fuel (SNF) and high-level radioactive waste (HLW) as provided in Section 302 of the Nuclear Waste Policy Act of 1982 (Pub. L. 97-425). Under the contract set forth in § 961.11 of this Part, DOE will take title to, transport, and dispose of spent nuclear fuel and/or high-level radioactive waste delivered to DOE by those owners or generators of such fuel or waste who execute the contract. In addition, the contract will specify the fees owners and generators of SNF and/or HLW will pay for these services. All receipts, proceeds, and revenues realized by DOE under the contract will be deposited in the Nuclear Waste Fund, an account established by the Act in the U.S. Treasury. This fund will pay for DOE's radioactive waste disposal activities, the full costs of which will be borne by the owners and generators under contract with DOE for disposal services.

§ 961.2 Applicability.

This part applies to the Secretary of Energy or his designee and any person who owns or generates spent nuclear fuel or high-level radioactive waste, of domestic origin, generated in a civilian nuclear power reactor. If executed in a timely manner, the contract contained in this part will commit DOE to accept title to, transport, and dispose of such spent fuel and waste. In exchange for these services, the owners or generators of such fuel or waste shall pay fees specified in the contract which are intended to recover fully the costs of the disposal services to be furnished by DOE. The contract must be signed by June 30, 1983, or by the date on which such owner or generator commences generation of, or takes title to, such spent fuel or waste, whichever occurs later. These deadlines may be waived if the Secretary of energy affirms in writing, in accordance with section 302(b)(1)(A)(ii) of the Act, before the applicable deadline, that the owner or generator is actively and in good faith negotiating with the Secretary for a contract covered by this part.

§ 961.3 Definitions.

For purposes of this part —

"Act" means the Nuclear Waste Policy Act of 1982, Pub. L. 97-425, 96 Stat. 2201 *et seq.* (to be codified at *42 U.S.C. 10101 et seq.* ).

"Contract" means the agreement set forth in § 961.11 of this part and any duly executed amendment or modification thereto.

"Generator" means any person who is licensed by the Nuclear Regulatory Commission to use a utilization or production facility under the authority of section 103 or 104 of the Atomic Energy Act of 1954 *(42 U.S.C. 2133,* 2134).

"Owner" means any person who has title to spent nuclear fuel or high-level radioactive waste.

"Purchaser" means any person, other than a Federal agency, who is licensed by the Nuclear Regulatory Commission to use a utilization or production facility under the authority of section 103 or 104 of the Atomic Energy Act of 1954 *(42 U.S.C. 2133,* 2134) or who has title to spent nuclear fuel or high level radioactive waste and who has executed a contract with DOE.

"Secretary" means the Secretary of Energy or his designee.

Other definitions relating to the subject matter of this rule are set forth in Article II of the contract which is contained in § 961.11, Text of the contract, below.

§ 961.4 Deviations

Requests for authority to deviate from this part shall be submitted in writing to the Contracting Officer, who shall forward the request for approval to the Senior Procurement Official, Headquarters. Each request for deviation shall contain the following information:

(a) A statement of the deviation desired, including identification of the specific paragraph number(s) of the contract;

(b) A description of the intended effect of the deviation;

(c) The reason why the deviation is considered necessary or would be in the best interests of the Government;

(d) The name of the owner or generator seeking the deviation and nuclear power reactor(s) affected;

(e) A statement as to whether the deviation has been requested previously and, if so, circumstances of the previous request;

(f) A statement of the period of time for which the deviation is needed; and

(g) Any pertinent background information will contribute to a full understanding of the desired deviation.

§ 961.5 Federal Agencies

Federal agencies or departments requiring DOE's disposal services for SNF and/or HLW will be accommodated by a suitable interagency agreement reflecting, as appropriate, the terms and conditions set forth in the contract in § 961.11; *provided, however,* that the fees to be paid by Federal agencies will be equivalent to the fees that would be paid under the contract.

§ 961.6 [Reserved]

§ 961.7 [Reserved]

§ 961.8 [Reserved]

§ 961.9 [Reserved]

§ 961.10 [Reserved]

Subpart B — Standard Contract for Disposal of Spent Nuclear Fuel and/or High-Level Radioactive Waste

§ 961.11 Text of the contract.

The text of the standard contract for disposal of spent nuclear fuel and/or high-level radioactive waste follows:

U.S. Department of Energy Contract No. — — — —

Contract for Disposal of Spent Nuclear Fuel and/or High-Level Radioactive Waste

THIS CONTRACT, entered into this — — — — — — day of — — — — 19 — —, by and between the UNITED STATES OF AMERICA (hereinafter referred to as the "Government"), represented by the UNITED STATES DEPARTMENT OF ENERGY (hereafter referred to as "DOE") and — — — — — — , a corporation organized and existing under the laws of the State of — — — — — — (hereinafter referred to as the "Purchaser").

Witnesseth that:

Whereas, the DOE has the responsibility for the disposal of high-level radioactive waste and spent nuclear fuel of domestic origin from civilian nuclear power reactors in order to protect the public health and safety, and the environment; and

Whereas, all costs associated with the preparation, transportation, and the disposal of spent nuclear fuel and high-level radioactive waste from civilian nuclear power reactors shall be borne by the owners and generators of such fuel and waste; and

Whereas, the DOE is required to collect a full cost recovery fee from any Purchaser delivering to the DOE any such spent nuclear fuel and/or high level radioactive waste; and

Whereas, the DOE is authorized to enter into contracts for the permanent disposal of spent nuclear fuel and/or high level radioactive waste of domestic origin in DOE facilities; and

Whereas, the Purchaser desires to obtain disposal services from DOE; and

Whereas, DOE is obligated and willing to provide such disposal services, under the terms and conditions hereinafter set forth; and

Whereas, this contract is made and entered into under the authority of the DOE Organization Act (Pub. L. 95-91, *42 U.S.C. 7101 et seq.* ) and the Nuclear Waste Policy Act of 1982 (Pub. L. 97-425);

Now, Therefore, the parties hereto do hereby agree as follows:

Article I — Definitions

As used throughout this contract, the following terms shall have the meanings set forth below:

1. The term "Assigned Three-Month Period" means the period that each Purchaser will be assigned by DOE for purposes of reporting kilowatt hours generated and sold by the Purchaser's nuclear power reactor and for establishing fees due and payable to DOE.

2. The term "Cask" means a container for shipping spent nuclear fuel and/or high-level radioactive waste which meets all applicable regulatory requirements.

3. The term "Civilian Nuclear Power Reactor" means a civilian nuclear powerplant required to be licensed under Sections 103 or 104(b) of the Atomic Energy Act of 1954, as amended *(42 U.S.C. 2133,* 2134(b)).

4. The term "Commission" means the United States Nuclear Regulatory Commission.

5. The term "Contract" means this agreement and any duly executed amendment or modification thereto.

6. The term "Contracting Officer" means the person executing this contract on behalf of the Government, and any other officer or civilian employee who is a properly designated Contracting Officer; and the term includes, except as otherwise provided in this contract, the authorized representative of a Contracting Officer acting within the limits of his authority.

7. The term "Delivery Commitment" means a promise by the Purchaser to deliver spent nuclear fuel and/or high-level radioactive waste to the DOE within a specified year.

8. The term "Delivery" means the transfer of custody of spent nuclear fuel or high-level radioactive waste from Purchaser to DOE at the Purchaser's civilian nuclear power reactor or such other domestic site as may be designated by the Purchaser and approved by DOE.

9. The term "Disposal" means the emplacement in a repository of high-level radioactive waste, spent nuclear fuel, or other highly radioactive waste with no foreseeable intent of recovery, whether or not such emplacement permits recovery of such waste.

10. The term "DOE" means the United States Department of Energy or any duly authorized representative thereof, including the Contracting Officer.

11. The term "DOE Facility" means a facility operated by or on behalf of DOE for the purpose of disposing of spent nuclear fuel and/or high level radioactive waste.

12. The term "Full Cost Recovery," means the recoupment by DOE, through Purchaser fees, of all direct costs, indirect costs, and all allocable overhead, consistent with generally accepted accounting principles, of providing disposal services and conducting related activities authorized by the Nuclear Waste Policy Act of 1982 (Pub. L. 97-425). As used herein, the term "Cost" includes the application of fees for those uses expressly set forth in section 302(d) of the said Act and all other uses specified in the Act, such as, but not limited to, interest on funds borrowed from the U.S. Treasury and interest on funds appropriated by the Congress.

13. The term "High-Level Radioactive Waste" (HLW) means — (A) the highly radioactive material resulting from the reprocessing of spent nuclear fuel, including liquid waste produced directly in reprocessing and any solid material derived from such liquid waste that contains fission products in sufficient concentrations; and

(B) other highly radioactive material that the Commission, consistent with existing law, determines by rule requires permanent isolation.

14. The term "Kilowatt Hours Generated and Sold" means electricity generated at a civilian nuclear power reactor as measured at the station busbar, net of all station uses, including an equivalent amount of electricity for any process heat generated by the reactor and used other than at the reactor.

15. The term "Purchaser's Site" means the location of Purchaser's civilian nuclear power reactor or such other location as the Purchaser may designate.

16. The term "Quarterly Treasury Rate" means the current value of funds rate as specified by the Treasury Fiscal Requirements Manual, Volume 1, Part 6, section 8020.20. This rate is published quarterly in the Federal Register prior to the beginning of the affected quarter.

17. The term "Shipping Lot" means a specified quantity of spent nuclear fuel or high level waste designated by Purchaser for transportation by DOE on a specified date.

18. The term "Spent Nuclear Fuel" (SNF) means fuel that has been withdrawn from a nuclear reactor following irradiation, the constituent elements of which have not been separated by reprocessing.

19. The term "Spent Nuclear Fuel of Domestic Origin" means irradiated fuel material used in nuclear power reactors located only in the United States.

20. The term "Year" means the period which begins on October 1 and ends on September 30.

Article II — Scope

This Contract applies to the acceptance by DOE of spent nuclear fuel (SNF) and/or high-level radioactive waste

(HLW) from civilian nuclear power reactors and, with respect to such material, establishes the fees to be paid by the Purchaser for the services rendered hereunder by DOE. The services provided to the Purchaser by DOE under this contract are related to disposal of SNF and/or HLW of domestic origin from civilian nuclear power reactors. The SNF and/or HLW shall be specified in a delivery commitment schedule as provided in Article IV below. The disposal services to be provided by DOE under this contract shall commence not later than January 31, 1998 and shall continue until such time as all SNF and/or HLW from the civilian nuclear power reactors specified in Appendix "A", annexed hereto and made a part hereof, has been disposed of as provided for in this contract.

Article III — Term

The term of this contract shall be from the date of execution until such time as DOE has accepted SNF and/or HLW from the civilian nuclear power reactors specified in Appendix "A."

Article IV — Delivery of SNF and/or HLW

A. Description of SNF and/or HLW

The Purchaser shall deliver to DOE and DOE shall, as provided for in this contract, receive the SNF and/or HLW which is described in accordance with Article VI.A of this contract, for disposal thereof.

B. Delivery Commitment Schedule

Delivery commitment schedule(s), in the form set forth in Appendix *B*, annexed hereto and made a part hereof, for delivery of SNF and/or HLW shall be furnished to DOE by Purchaser. After DOE has issued its proposed acceptance ranking, described in paragraph B.6 of Article V of this contract, the Purchaser shall submit delivery commitment schedule(s)) at least sixty-three (63) months prior to the delivery date specified therein. DOE shall approve or disapprove such schedules within three (3) months after receipt. In the event of disapproval, DOE shall advise the Purchaser in writing of the reasons for such disapproval and request a revised schedule from the Purchaser, to be submitted to DOE within thirty (30) days after receipt of DOE's notice of disapproval. Purchaser shall have the right to adjust the quantities of SNF and/or HLW + or - 20%, and the delivery schedule +2 months, up to the submission of the final delivery schedule.

In addition, the Purchaser may change the specific assemblies to be delivered so long as the SNF meets the acceptance criteria of the contract. These adjustments shall be subject to DOE's prior written approval, which approval shall not be unreasonably withheld.

C. Final Delivery Schedule

Final delivery schedule(s), in the form set forth in Appendix *C*, annexed hereto and made a part hereof, for delivery of SNF and/or HLW covered by an approved delivery commitment schedule(s) shall be furnished to DOE by Purchaser. The Purchaser shall submit to DOE final delivery schedules not less than 12 months prior to the delivery date specified therein. DOE shall approve or disapprove a final delivery schedule within forty-five (45) days after receipt. In the event of disapproval, DOE shall advise the Purchaser in writing of the reasons for such disapproval and shall request a revised schedule from the Purchaser, to be submitted to DOE within thirty (30) days after receipt of DOE's notice of disapproval.

D. Emergency Deliveries

Emergency deliveries of SNF and/or HLW may be accepted by DOE before the date provided in the Delivery Commitment upon prior written approval by DOE.

Article V — Responsibilities of the Parties

A. Purchaser's Responsibilities

1. *Annual Forecast of Shipments.* (a) On an annual basis, commencing October 1, 1983, the Purchaser shall provide DOE with information on actual discharges to date and projected discharges for the next ten (10) years in the form and content set forth in Appendix *D*, annexed hereto and made a part hereof.

(b) In the event that the Purchaser fails to provide the annual forecast in the form and content required by DOE, DOE may, in its sole discretion, require a rescheduling of delivery.

2. *Preparation for Transportation.* (a) The Purchaser shall arrange for all preparation, packaging, required inspections, and loading activities necessary for the transportation of SNF and/or HLW to the DOE facility. The Purchaser shall notify DOE of such activities sixty (60) days prior to the commencement of such activities. The preparatory activities by the Purchaser shall be made in accordance with all applicable laws and regulations relating to the Purchaser's responsibilities hereunder. DOE may designate a representative to observe the preparatory activities conducted by the Purchaser at the Purchaser's site, and the Purchaser shall afford access to such representative.

(b) Except as otherwise agreed to by DOE, the Purchaser shall advise DOE, in writing as specified in Appendix "F", annexed hereto and made a part hereof, as to the description of the material in each shipping lot sixty (60) days prior to scheduled transportation of that shipping lot by DOE.

(c) The Purchaser shall be responsible for maintenance, protection and preservation of any and all shipping casks furnished to the Purchaser by DOE for the performance of this contract. The Purchaser shall be liable for any loss of or damage to such DOE-furnished property, and for expenses incidental to such loss or damage while such casks are in the possession and control of the Purchaser except as otherwise provided for hereunder.

B. DOE Responsibilities

1. DOE shall review and approve or disapprove Purchaser's proposed delivery commitment schedule(s), and final delivery schedules within approximately ninety (90) days after receipt thereof;

2. DOE shall arrange for, and provide, all necessary transportation of the SNF and/or HLW to the DOE facility. Unless otherwise agreed to in advance by DOE, DOE shall arrange for a shipping cask to be furnished to the Purchaser sufficiently in advance to accommodate scheduled deliveries. Such casks shall be suitable for use at the Purchaser's site.

3. DOE shall accept at the Purchaser's site SNF and/or HLW. Prior to such acceptance all SNF and/or HLW shall meet the acceptance criteria contained in Article *VI* of this contract.

4. DOE may fulfill any of its obligations, or take any action, under this contract either directly or through contractors.

5. DOE shall annually provide to the Purchaser pertinent information to support waste disposal program cost projections, project plans and progress reports.

6. Beginning on April 1, 1991, DOE shall issue an annual acceptance ranking for receipt of SNF and/or HLW at the DOE repository. This priority ranking shall be based on the age of SNF and/or HLW as calculated from the date of discharge of such material from the civilian nuclear power reactor. The oldest fuel or waste will have the highest priority for acceptance, except as provided in paragraph B.3 of Article *VI* of this contract.

Article VI — Criteria for Disposal

A. General Requirements

1. Except as otherwise provided in this contract, DOE shall accept hereunder only such SNF and/or HLW which has been approved for delivery in advance by DOE and which meets the General Specifications for such fuel and waste as set forth in Appendix "*E* ", annexed hereto and made a part hereof.

2. Purchaser shall provide to DOE a detailed description of the SNF and/or HLW to be delivered hereunder in such form and content as DOE may require as set forth in Appendix "*F* ", annexed hereto and made a part hereof. Purchaser shall promptly advise DOE of any changes in said SNF and/or HLW as soon as they are known to the Purchaser.

3. Purchaser shall accurately classify SNF and/or HLW prior to delivery in accordance with paragraphs "*B* " and "*C* " of Appendix "*E* ".

4. DOE's obligation for disposing of SNF under this contract also extends to other than Standard Fuel; however, for any SNF which has been designated by the Purchaser as other than Standard Fuel, as that term is defined in Appendix "*E* ", the Purchaser shall obtain delivery and procedure confirmation from DOE prior to delivery to DOE by Purchaser. DOE shall advise Purchaser within approximately sixty (60) days after receipt of such confirmation request as to the technical feasibility of disposing of such fuel on the currently agreed to schedule and any schedule adjustment for such services.

B. Acceptance Criteria

48 FR 5458

1. *Verification of SNF and/or HLW.* During cask loading and prior to acceptance by DOE for transportation to the DOE facility, the SNF and/or HLW description of the shipping lot will be verified by DOE. To the extent the SNF and/or HLW is consistent with the description submitted and approved, in accordance with Appendices "*E* " and "*F,* " DOE agrees to accept such SNF and/or HLW for disposal when DOE has verified the SNF and/or HLW description, determined the material is properly loaded, packaged, marked, labeled and ready for transportation, and has taken custody, as evidenced in writing, of the material at the Purchaser's site, f.o.b. carrier. A properly executed off-site radioactive shipment record describing cask contents mut be prepared by the Purchaser along with a signed certification which states: "This is to certify that the above named materials are properly described, classified, packaged, marked and labeled and are in proper condition for transfer according to the applicable regulations of the U.S. Department of Transportation."

2. *Improperly Described SNF and/or HLW.* (a) *Prior to Acceptance* — If SNF and/or HLW is determined by DOE to be improperly described prior to acceptance by DOE at the Purchaser's site, DOE shall promptly notify the Purchaser in writing of such determination. DOE reserves the right, in its sole discretion, to refuse to accept such SNF and/or HLW until the SNF and/or HLW has been properly described. The Purchaser shall not transfer such SNF and/or HLW to DOE unless DOE agrees to accept such SNF and/or HLW under such other arrangements as may be agreed to, in writing, by the parties.

(b) *After Acceptance* — If subsequent to its acceptance DOE finds that such SNF and/or HLW is improperly described, DOE shall promptly notify the Purchaser, in writing, of such findings. In the event of such notification, Purchaser shall provide DOE with a proper designation within thirty (30) days.

3. *Acceptance Priority Ranking.* Delivery commitment schedules for SNF and/or HLW may require the disposal of more material than the annual capacity of the DOE disposal facility (or facilities) can accommodate. The following acceptance priority ranking will be utilized:

(a) Except as may be provided for in paragraph (2) below, acceptance priority shall be based upon the age of the SNF and/or HLW as calculated from the date of discharge of such materials from the civilian nuclear power reactor to the date specified for transportation by DOE in the delivery commitment schedule. DOE will first accept from Purchaser the oldest SNF and/or HLW for disposal in the DOE facility;

(b) Notwithstanding the age of the SNF and/or HLW, priority may be accorded any SNF and/or HLW removed from a civilian nuclear power reactor that has reached the end of its useful life or has been shut down permanently for whatever reason.

Article VII — Title

Title to all SNF and/or HLW accepted by DOE for disposal shall pass to DOE upon acceptance by DOE at the Purchaser's site as provided for in Article VI hereof. DOE shall be solely responsible for control of all material upon assuming title. DOE shall have the right to dispose as it sees fit of any SNF and/or HLW to which it has taken title. The Purchaser shall have no claim against DOE or the Government with respect to such SNF or HLW nor shall DOE or the Government be obligated to compensate the Purchaser for such material.

Article VIII — Fees and Terms of Payment

A. Fees

1. Effective April 7, 1983 Purchaser shall be charged a fee in the amount of 1.0 mil per kilowatt-hour (MKWH) on electricity generated and sold by Purchaser's nuclear power reactors. The said fee shall be paid as specified in Paragraph B of this Article VIII.

2. For SNF, or solidified high-level radioactive waste derived from SNF, which fuel was used to generate electricity in a civilian nuclear power reactor prior to April 7, 1983, a one-time fee will be assessed by applying average dollar per kilogram charges to three (3) distinct ranges of fuel burnup reflecting actual disposal costs for those ranges so that the integrated cost across all discharged fuel is equivalent to 1.0 mill per kilowatt hour. The payment of this fee by the Purchaser shall be made to DOE as specified in paragraph B of Article VIII below.

3. DOE will annually review the adequacy of the fees and adjust them, if necessary, in order to assure that all costs to be incurred by the Government shall be recovered. The proposed fee adjustment will be transmitted to Congress and shall

be effective after a period of ninety (90) days of continuous session have elapsed following receipt of such transmittal unless either House of Congress adopts a resolution disapproving the proposed adjustment. The adjustment to the fee will not be retroactive to previously generated electricity.

4. For in-core fuel as of April 7, 1983, that portion of the fuel burned through April 6, 1983 shall be subject to the one-time fee as calculated in accordance with paragraph A.2. of this Article VIII. That portion of such fuel unburned as of April 7, 1983 shall be subject to the 1.0 mill per kilowatt hour charge. Adjustment in the calculation for the unburned portion of such fuel can be made until April 7, 1984 without penalty. After April 7, 1984, the provision for late payment of fee shall apply as specified in paragraph C of this Article *VIII.*

B. Payment

1. For electricity generated and sold on or after April 7, 1983, fees shall be paid quarterly by the Purchaser and must be received by DOE not later than the close of business on the last business day of the month following the end of each assigned three month period. The first payment shall be due on July 7, 1983. A one-time adjustment period payment shall be due — — —. The assigned three month period, for purposes of payment and reporting of kilowatt hours, shall begin — — —.

2. For SNF discharged prior to April 7, 1983, the Purchaser shall, at the time of contract execution, select one of the following fee payment options:

(a) *Option 1* — The Purchaser's fee shall be prorated evenly over forty (40) quarters at the fee schedule rate in effect at the date of the first payment and will consist of the SNF fee and interest on the outstanding fee balance at the date of the first payment. The interest is to be calculated at the ten year Treasury note rate in effect on the date of the first payment. In no event shall the end of the forty (40) quarters extend beyond the first scheduled delivery date as reflected in the DOE Delivery Commitment Schedule. Payment shall be made concurrently with the assigned three month period payments.

(b) *Option 2* — The Purchaser's fee shall be paid in the form of a single payment, at the fee schedule rate in effect at the time of payment, at any time prior to the first delivery as reflected in the DOE approved Delivery Commitment Schedule.

3. *Method of Payment.* (a) Payments shall be made by wire transfer, in accordance with instructions specified by DOE in Appendix *"G",* annexed hereto and made a part hereof and must be received within the time periods specified in paragraph B.1 of this Article VIII.

(b) The Purchaser will complete a Standard Remittance Advice, as set forth in Appendix *G,* for each assigned three month period payment, and mail the remittance advice postmarked no later than the last business day of the month following each assigned three month period to "Department of Energy, Office of CONTROLLER, Cash Management Division, Box 500, Room D-208, Germantown, Maryland 20874."

4. Any fees not paid on a timely basis or underpaid because of miscalculation will be subject to interest as specified in paragraph C of this Article VIII.

C. Interest on Late Fees

1. DOE will notify the Purchaser of amounts due only when unpaid or underpaid by the dates specified in paragraph B above. Interest will be levied according to the following formula:

Interest = Amount due to DOE for assigned three month period X Quarterly Treasury rate plus six percent (6%) X # Months late including month of payment (fractions rounded up to whole months) / 12

2. Interest is payable at anytime prior to the due date for the subsequent assigned three month period fee payment. Nonpayment by the end of the subsequent assigned three month period will result in compounding of interest due. Purchaser shall complete a Standard Remittance Advice for interest payments.

3. Collection, following the assessment of a late fee by DOE, will be applied against accured interest first and the principal thereafter.

D. *Effect of Payment*

Upon payment of all applicable fees and any applicable interest due thereon, the Purchaser shall have no financial obligation to DOE for the disposal of the accepted SNF and/or HLW.

48 FR 5458

E. Audit

1. The DOE or its representative shall have the right to perform any audits or inspections necessary to determine whether Purchaser is paying the correct amount under the fee schedule set forth in Paragraph A, above.

2. Nothing in this contract shall be deemed to preclude an audit by the General Accounting Office of any transaction under this contract.

3. The Purchaser shall furnish DOE with such records, reports and data as may be necessary for the determination of quantities delivered hereunder and for final settlement of amounts due under this contract and shall retain and make available to DOE and its authorized representative for examination at all reasonable times such records, reports and data for a period of three (3) years from the completion of delivery of all material under this contract.

Article IX — Delays

A. Unavoidable Delays by Purchaser or DOE

Neither the Government nor the Purchaser shall be liable under this contract for damages caused by failure to perform its obligations hereunder, if such failure arises out of causes beyond the control and without the fault or negligence of the party failing to perform. In the event circumstances beyond the reasonable control of the Purchaser or DOE — such as acts of God, fire, flood — cause delay in scheduled delivery, acceptance or transport of SNF and/or HLW, the party experiencing the delay will notify the other party as soon as possible after such delay is ascertained and the parties will readjust their schedules, as appropriate, to accommodate such delay.

B. Avoidable Delays by Purchaser or DOE

In the event of any delay in the delivery, acceptance or transport of SNF and/or HLW to DOE caused by circumstances within the reasonable control of either the Purchaser or DOE or their respective contractors or suppliers, the charges and schedules specified by this contract will be equitably adjusted to reflect any estimated additional costs incurred by the party not responsible for or contributing to the delay.

Article X — Suspension

1. In addition to any other rights DOE may have hereunder, DOE reserves the right, at no cost to the Government, to suspend this contract upon written notice to the Purchaser within ninety (90) days of the Purchaser's failure to perform its obligations hereunder, and the Purchaser's failure to take corrective action within thirty (30) days after written notice of such failure to perform as provided above, unless such failure shall arise from causes beyond the control and without the fault or negligence of the Purchaser, its contractors or agents. However, the Purchaser's obligation to pay fees required hereunder shall continue unaffected by any suspension hereunder.

2. The DOE reserves the right to suspend any scheduled deliveries in the event that a national emergency requires that priority be given to Government programs to the exclusion of the work under this contract. In the event of such a suspension by the Government, the DOE shall refund that portion of payments representing services not delivered as determined by the Contracting Officer to be an equitable adjustment. Any disagreement arising from the refund payment, if any, shall be resolved as provided in the clause of this contract, entitled "Disputes."

Article XI — Remedies

Nothing in this contrct shall be construed to preclude either party from asserting its rights and remedies under the contract or at law.

Article XII — Notices

All notices and communications between the parties under this contract (except notices published in the Federal Register) shall be in writing and shall be sent to the following addressees:

To DOE:

—

—

To the Purchaser:

—

—

However, the parties may change the addresses or addressees for such notices or communications without formal modification to this contract; *provided, however,* that notice of such changes shall be given by registered mail.

Article XIII — General Provisions

The General Terms and Conditions of this contract are set forth in full in Appendix "*H* ", annexed hereto and made a part hereof.

Article XIV — Representation Concerning Nuclear Hazards Indemnity

DOE represents that it will include in its contract(s) for the transportation of SNF and/or HLW to the DOE facility, and in its contract(s) for the operation of any such facility an indemnity agreement based upon Section 170(d) of the Atomic Energy Act of 1954, as amended, a copy of which agreement shall be furnished to the Purchaser; that under said agreement, DOE shall have agreed to indemnify the contractor and other persons indemnified against claims for public liability (as defined in said Act) arising out of or in connection with contractual activities; that the indemnity shall apply to covered nuclear incidents which (1) take place at a contract location; or (2) arise out of or in the course of transportation of source, special nuclear or by–product material to or from a contract location. The obligation of DOE to indemnify shall be subject to the conditions stated in the indemnity agreement.

Article XV — Assignment

The rights and duties of a party to this contract may be assignable with transfer of title to the SNF and/or HLW involved; *provided, however,* that notice of any such transfer shall be made to DOE within ninety (90) days of transfer.

Article XVI — Entire Contract

This contract, which consists of Articles I through XVI and Appendixes "A" through "*H* ", annexed hereto and made a part hereof, contains the entire agreement between the parties with respect to the subject matter hereof. All previous and collateral contracts, representations, warranties, promises and conditions of sale are superseded by this contract. Any representation, promise, or condition not incorporated in this contract shall not be binding on either party. No course of dealing or usage of trade or course of performance shall be relevant to explain or supplement any provision contained in this contract.

In witness whereof, the parties hereto have executed this contract as of the day and year first above written.

Appendices

A. Nuclear Power Reactors or Other Facilities Covered

B. Delivery Commitment Schedule

C. Final Delivery Schedule

D. Annual Forecast

E. Acceptance Criteria and General Specifications

F. Description of Purchaser's Fuel

G. Standard Remittance Advice

H. General Terms and Conditions

United States of America, United States Department of Energy

By: (Contracting Officer)

Witnesses as to execution on behalf of contractor:

(Name)

(Address)

(Name)

(Address)

(Purchaser's company name)

By:

Title:

I, (name), certify that I am the (title) of the corporation named as Purchaser herein; that (Name) who signed this document on behalf of the Purchaser was then (Title) of said corporation; that said document was duly signed for and on behalf of said corporation by authority of its governing body and is within the scope of its corporate powers.

In witness whereof, I have hereunto affixed my hand and the seal of said corporation this — — — day of — — —, 1983.

(Corporate Seal)

(Signature)

Appendix "A"

Nuclear Power Reactor(s) or Other Facilities Covered

Reactor/Facility Name:

Location:

Type:

Capacity:

Date of Commencement of Operation:

NRC License No.:

Appendix "B"

Delivery Commitment Schedule

In accordance with the contract for Disposal of Spent Nuclear Fuel and/or High-Level Radioactive Waste between — — — — — — (Purchaser) and DOE under Contract No. — — — dated — — —, the following Delivery Commitment

schedule is submitted by Purchaser to DOE. This Delivery Commitment Schedule shall be submitted by Purchaser and approved sixty-three (63 months) prior to delivery.

Reactor Name:

Type Reactor — PWR/BWR

Location

Shipping Lot No.

Discharge Date

Metric Tons Uranium

Number of Assemblies

Commitment Year for Delivery

Proposed Shipping Mode (Rail/Truck)

A detailed description of the Purchaser fuel will be submitted as set forth in Appendix E of this contract.

Unless otherwise agreed to in writing by DOE, the Purchaser shall furnish to DOE suitable proof of ownership of the SNF and/or HLW to be delivered hereunder. The Purchaser shall notify DOE in writing at the earliest practicable date of any change in said ownership.

By Purchaser:

Title

Date

Approved for DOE:

(Contracting Officer)

Date

Appendix "C"

Final Delivery Schedule

*(To be submitted by Purchaser not later than twelve (12) months prior to estimated date of first delivery).*

In accordance with the contract for Disposal of Spent Nuclear fuel and/or High-Level Radioactive Waste between — — — — — — (Purchaser) and DOE under Contract No. — — — dated — — — , the following Final Delivery schedule is submitted for DOE approval.

Reactor Name:

Type Reactor — PWR/BWR

Location

Shipping Lot No.

Discharge Date

Metric Tons Uranium

Number of Assemblies

Estimated Date First Delivery

Estimated Date Last Delivery

Proposed Shipping Mode (Rail/Truck)

Type of Shipping Casks Required

Number of Assemblies per Cask

Delivery to be made to DOE from Purchaser's site

The above data must correspond to the Delivery Commitment Schedule (Appendix B) regrouped for shipping purposes.

Purchaser confirms that no change has taken place in the status of ownership of the SNF and/or HLW schedule hereunder.

NOTE: Contact

Title

Phone

for DOE confirmation on an acceptable delivery date.

By purchaser:

Title

Date

Approved for DOE:

(Contracting Officer)

Date

Appendix "D"

Annual Forecast

In accordance with the contract for Disposal of Spent Nuclear Fuel and/or High-Level Radioactive Waste between — — — — — — (Purchaser) and DOE under Contract No. — — — dated — — —, the following Annual Forecast is submitted. This information is to be used for DOE planning purposes and does not represent a firm commitment by Purchaser.

Reactor Name:

Type Reactor — PWR/BWR

Location

Shipping Lot No.

Discharge Date

Metric Tons Uranium

Number of Assemblies

Commitment Year for Delivery

Proposed Shipping Mode (Rail/Truck)

By Purchaser:

Title

Date

Appendix "D"

(Enclosure 1)

Actual Discharges

In accordance with the contract for Disposal of Spent Nuclear Fuel and/or High-level Radioactive Waste between —

— — — (Purchaser) and DOE under Contract No. — — — — dated — — — — , the following Actual Discharge information is submitted.

Reactor Name:

Type of Reactor — PWR/BWR

Location

Shipping Lot No.

Discharge Date

Metric Tons Uranium

Number of Assemblies

Commitment Year for Delivery

Proposed Shipping Mode (Rail/Truck)

By Purchaser:

Title

Appendix "E"

Acceptance Criteria and General Specifications

A. *Fuel category identification.* a. Categories — Purchaser shall use reasonable efforts, utilizing technology equivalent to and consistent with the commercial practice, to properly classify Spent Nuclear Fuel (SNF) prior to delivery to DOE as follows:

a. "Standard Fuel" means SNF that meets all the General Specifications therefor set forth in Paragraph B below;

b. "Nonstandard Fuel" means SNF that does not meet one or more of the General Specifications set forth in Subparagraphs 1 through 4 of Paragraph B below, and which is classified as Nonstandard Fuel Classes NS-1 through NS-4, pursuant to Paragraph B below.

c. *"Failed Fuel"* means SNF that meets the specifications set forth in Subparagraphs 1 through 3 of Paragraph B below and which is classified as Failed Fuel Class F-1 through F-3 pursuant to Subparagraph 5 of Paragraph B below.

d. Fuel may have "Failed Fuel" and/or several "Nonstandard Fuel" classifications.

B. *Fuel description and subclassification — general specifications.* 1. *Maximum nominal physical dimensions.*

| | Boiling water reactor (BWR) | Pressurized waste reactor (PWR) |
|---|---|---|
| Overall Length | 14 feet, 11 inches | 14 feet, 10 inches. |
| Active Fuel Length | 12 feet, 6 inches | 12 feet, 0 inches. |
| Cross Section* | 6 inches x 6 inches | 9 inches x 9 inches. |

*The cross section of the fuel assembly shall not include the channel.

Note. — Fuel that does not meet these specifications shall be classified as Nonstandard Fuel — Class NS-1.

2. *Mechanical components.* (a) Cladding shall be Zircaloy 2, Zircaloy 4, stainless steel or such other material as may be approved in writing by DOE.

(b) Any nonfuel components such as control spiders, burnable poison rod assemblies, and control rod elements that are integral with the fuel assembly and do not require special handling may be stored and/or disposed of at no extra charge.

Note. — Fuel that does not meet these specifications shall be classified as Nonstandard Fuel — Class NS-2

3. *Cooling.* The minimum cooling time for fuel is five (5) years.

Note. — Fuel that does not meet these specifications shall be classified as Nonstandard Fuel — Class NS-3.

4. NON-LWR Fuel — Fuel from other than LWR power facilities shall be classified as Nonstandard Fuel — Class NS-4. Such fuel may be unique and require special handling, storage and disposal facilities.

5. *Failed fuel.* a. *Visual inspection.* Assemblies shall be visually inspected for evidence of structural deformity of damage to classing or spacers which may require special handling. Assemblies which (i) are structurally deformed or have damaged cladding to the extent that special handling may be required or (ii) for any reason cannot be handled with normal fuel handling equipment shall be classified as FAILED FUEL — F-1.

b. *Radioactivity release test.* Assemblies determined to be structurally sound by meeting the criteria of item a above, shall be tested in water by DOE approved means to determine the radioactive release resulting from (i) cladding leakage and/or (ii) surface deposits. Assemblies found to have such radioactivity release that the radioactivity level in the cask collant on delivery to DOE would exceed by 15 percent the regulatory limits permitted during transport of Spent Fuel Assemblies shall be classified as Failed Fuel — Class F-2.

For the initial loading of any shipping lot under this contract, the specified percentage shall be as measured by the Purchaser in the cask water at the reactor site prior to delivery to DOE. Such percentage may be subsequently modified based upon operating experience. For any water-cooled shipping lots, such limits shall be based on 10 CFR 71.36 (a) 2; for any gas-cooled shipping lots such limits shall be based on 10 CFR 71.35 (a) 4.

c. *Previously Encapsulated Assemblies.* Assemblies encapsulated by Purchaser prior to calssification hereunder shall be classified as FAILED FUEL — CLASS F-3. Purchaser shall advise DOE of the reason for the prior encapsulation of assemblies, in sufficient detail so that DOE may plan for appropriate subsequent handling.

2. *Summary of fuel classifications.* (a) Standard Fuel: (1) Class S-1; PWR. (2) Class S-2; BWR.

(b) Nonstandard Fuel: (1) Class NS-1; physical dimensions. (2) Class NS-2; mechanical components. (3) Class NS-3; short cooled. (4) Class NS-4; non-LWR.

(c) Failed Fuel: Class F-1; visual failure or damage. (2) Class F-2; radioactive "leakage". (3) Class F-3; encapsulated.

C. *High-Level radioactive waste.* The DOE shall accept high level radioactive waste. Detailed acceptance criteria and general specifications for such waste will be issued by the DOE no later than the date on which DOE submits its license appication to the Nuclear Regulatory Commission for the first disposal facility.

Appendix "F"

Detailed Description of Purchaser's Fuel

Reactor Name

Shipping Lot No.

Number of Assemblies Herein Described

This information shall be provided by Purchaser for each distinct fuel type within a shipping lot. It will accompany the Delivery Commitment Schedule.

The following definitions shall apply to the Spent Nuclear Fuel described in this Exhibit:

"*Fuel Element* " means the smallest integral unit of clad fuel (or blanket) containing Special Nuclear Material (SNM); i.e., a plate, tube, rod, disc, etc.

"*Subassembly* " means a group of elements, combined in a structural unit, which is grouped with other subassemblies to form the larger unit called the assembly.

"*Assembly* " means a group of fuel elements or subassemblies combined in a structural unit. The assembly is usually that fuel structure which is removed from the reactor as an individual unit.

All dimensions must be given in feet and inches and all weights in grams or kilograms.

A. *Form and composition of spent nuclear fuel.* 1. *Drawings Attached.* The following drawing(s) constitute(s) a

comprehensive illustration of the fuel elements, subassemblies, and assemblies to be delivered under the Contract:

1.1 Assembly, Dwg. — — , Rev. — —

1.2 Fuel Rod Details, Dwg. — — , Rev. — —

1.3 Upper and Lower End Fittings, Dwg. — — , Rev. — —

1.4 Grid Spacer, Detail, Dwg. — — , Rev. — —

1.5 Poison Members, Dwg. — — , Rev. — —

(May be proprietary information)

2. *Material Description.* The following summarizes the description of fuel elements, subassemblies, assemblies modified after discharge. Where dimensions are required, the nominal dimensions, as they relate to the said reactor, must be used and the best estimates of the maximum change of these dimensions because of irradation must be given. Weights must be dry, unirradiated weights with the expected range of weights also to be included.

(a) *Fuel Element Description.*

(1) Type (plate, disc, rod, tube, etc.) — —

(2) Nominal Dimensions:

Fuel Element Length — —

Active Fuel Element Length — —

(3) Nominal Weight — —

(4) Weight of Special Nuclear Material (SNM) before Irradiation:

Total U — —

235 U — —

(5) Chemical form of SNM (UO[2] , UC, etc.) — — Weight — —

(6) Fabricated form of SNM (pellets, slugs, ribbons) and loading pattern in element — —

(7) Alloy or dispersing material (Al, SS, etc.) — — Weight — —

(8) Cladding Material (Zr, SSs, etc.) — —

(9) Bonding Material, if any (Na, Al-Si, etc.) — —

(10) Other materials contained in fuel element:

—

—

Any material not covered by the above shall be added to describe the element completely.

—

—

(b) *Subassembly description*

48 FR 5458

(1) Number of elements — —

(2) Overall dimensions — —

(3) Total weight — —

(c) *Assembly description.*

(1) Number of elements — —

(2) Overall dimensions: Length — — ; Enve lope — —

(3) Overall weight — —

(4) Casing Material (Zr, SS, etc.) — —

3. *Identification:* Each separately removable unit in a Shipping Lot must be identified by a durable metal tag or label, or by embossing.

Identification of the units to be delivered under this Delivery Commitment are as follows:

— —

— —

B. *Fuel classification.* 1. In accordance with provisions of Article VI, "Criteria for Disposal", of this contract, the fuel in the shipping lot is hereby classified as — — .

2. If this fuel has been designated as other than Standard Fuel — "Class S-1" or "Class S-2", the basis for the classification must be listed below.

—

—

C. *Specifications for fuel units that contain breeched cladding or exposed SNM or that are warped.* 1. A fuel element with breeched cladding or exposed SNM shall be canned in a container whose material and design shall be approved by DOE unless DOE determines that such canning is unnecessary.

2. Units distorted beyond specified dimensional limits must be considered on an individual basis. The Purchaser should provide dimensional information for each warped unit below.

—

—

D. *Irradiation history.* Report the irradiation history for each assembly as indicated in the table below:

| Assembly No. | Data set 1 | 2 | 3 | 4 | etc. |
|---|---|---|---|---|---|
| 1. Reactor position | | | | | |
| 2. Startup date | | | | | |
| 3. Average reactor power, MWTh | | | | | |
| 4. Average fuel exposure, MW/MTU | | | | | |
| 5. Cumulative fuel exposure, MWD/MTU | | | | | |
| 6. Shutdown date | | | | | |

48 FR 5458

| Assembly No. | Data set | | | | |
| --- | --- | --- | --- | --- | --- |
| | 1 | 2 | 3 | 4 | etc. |
| 7. Heat output assembly, watts as of date | | | | | |

Appendix "G"

Standard Remittance of Advice (RA) for Payment of Fees

Three Month Assigned

Period Covered:

From — — — — to

I. Purchaser (Utility name and address)

A. Contract I.D.

II. Charge based upon Spent Nuclear Fuel Fee Schedule/One-Time Fee Payment Agreement $ — —

A. Fee Schedule Rate

B. Date of First/Single Payment

C. Unpaid Balance to Date

D. Date of Current Fee Payment

E. Ten Year Treasury Note Rate

III. MKWH Fee (Identify power plant(s) covered by this RA showing on a spearate schedule the beginning meter reading, ending meter reading, difference for each) $ — —

A. Total Nuclear KWH Generated During Assigned Three Month Period Covered

B. Date of Current Fee Payment

C. Fee Schedule Rate

IV. Underpayment (as notified by DOE), $ — —

A. Date of Notification

B. DOE Invoice Number

C. Interest Paid

V. Late Payments (as notified by DOE), $ — —

A. Date of Notification

B. DOE Invoice Number

VI. Other Credits Claimed (Explain), $ — —

*VII. Total Remittance, $ — —*

Prepared by:

Phone Number:

Date:

—

For DOE use only below this line

—

1. Deposit to Account 89-5227 — —

2. Receipt of Payment Verification:

a. Date Payment Received

b. Verification Performed by

3. Posted to Cumulative Remitter Ledger:

a. Date Posted

b. Posted by

4. Late Payments:

a. Calculation of late charge (attach schedule)

b. Billing date

5. After processing RA furnish a copy to OCRWM.

Instructions for Completing DOE Remittance Advice

Section I

Name and address self-explanatory

Contract number will be the identification number assigned by DOE upon execution.

Section II

Based upon inventory of spent fuel and HLW amassed prior to April 7, 1983, times the kilogram fee. If the 10-year option is selected, purchaser's liability is fixed at the fee schedule rate and the Ten Year Treasury Note Rate in effect as of the date of the first payment. Payment will be made in quarterly installments concurrently with the normal three month assigned period. If the single payment option is selected, the purchaser will submit payment for the entire unpaid liability at the rate in effect at the date of payment.

a. Fee schedule rate in effect at first/single payment. Complete this section only with first spent fuel fee payment.

b. Self explanatory.

c. Self explanatory.

d. Self explanatory.

e. Ten Year Treasury Note Rate in effect at first/single payment. Complete this section only with first spent fuel fee payment.

$. Amount paid.

Section III

Based upon electricity generated on or after April 7, 1983, times the current fee of 1M/KWH. Schedules should be attached specifying the gross amount of power meter through each plant during the assigned period.

a. Total power generated from attached schedules.

b. Self explanatory.

c. Fee schedule rate in effect at time of payment.

$. Amount paid.

Sections IV & V

(Same instructions) DOE will invoice purchasers, when underpayments or late payments occur, reference a particular payment, and state the reason for the invoice.

A. The date the purchaser received DOE invoice.

B. DOE's invoice #.

C. Interest paid.

D. Self explanatory.

$. Consists of interest if late payment or fees plus interest if under payment.

Section VI

Explanation on an attached sheet of paper if necessary why DOE has been overpaid and the proposed disposition of the payment, e.g., apply credit against this payment or sent refund.

S. If applied against this payment this number is negative. If refund desired, leave blank and pay gross amount due from sections II through V.

Section VIII

The sum of Section II through VI.

Instruction Guide for Remittance of Nuclear Waste Disposal Fees to Department of Energy Via Wire Transfer

Payments made to the Department of Energy (DOE) for Nuclear Waste Disposal Fees will be affected by the Purchaser's commerical bank via the Federal Reserve Communications System (also known as Fedwire) to the Department of Treasury. If the Purchaser's commercial bank is not a Federal Reserve member, then the Purchaser's bank will use a correspondent member bank to effect the transfer of funds.

Purchaser must provide specific information to its bank so that the transfer of funds can take place. Failure to correctly provide the information could result in delay crediting of the remittance to DOE and could subject the purchaser to late charges.

A wire transfer of funds message with descriptions of specific date elements is provided in Enclosure A. Enclosure B contains instructions and a sample form of a transfer of funds that shows the specific information to be supplied by the Purchaser when requesting its commercial bank to initiate a transfer of funds.

Enclosure C shows a transfer message form that may be photocopied and used each time a transfer of funds must be made. Constant information has been preprinted on the form. Only that information applicable to that particular monthly remittance (i.e., amount, date, company name) must be filled in prior to submitting the form to your bank.

If additional information is required, contact DOE representatives *Mark Loop of Joe Startari* on ((301) 353-4899 or 353-5857).

Enclosure A — Guide for Funds Transfer Messages to Treasury

The following instructions provide specific information which is required so that a funds (wire) transfer message can be transmitted to the Departmrent of the Treasury. The funds transfer message format is shown in Exhibit 1. A narrative description of each item on the funds transfer message follows:

*Line 1.* Item 1 — Priority Code — The priority code will be provided by the sending bank. (Note: Some Federal Reserve district banks may not require this item.)

*Line 2.* Item 2 — Treasury Department Code — The nine-digit identifier "021030004" is the routing symbol of the Treasury. This item is a constant and is required for all funds transfer messages sent to Treasury.

Item 3. *Type Code* — The type code, 10, identifies funds transfer messages. This item is a constant and is required for all funds transfer messages sent to Treasury.

*Line 3.* Item 4 — *Sending Bank Code* — This nine-digit identifier will be provided by the sending bank.

Item 5. *Class* — The class field may be used at the option of the sending bank. (Note: Some Federal Reserve Districts prohibit use of this class/field.)

Item 6. *Reference Number* — The reference number will be inserted by the sending bank to identify the transaction.

Item 7. *Amount* — The amount must include the dollar sign and the appropriate punctuation including cents digits. This item will be provided by the Purchaser.

*Line 4.* Item 8 — *Sending Bank Name* — The telegraphic abbreviation which corresponds to item 4 will be provided by the sending bank.

*Line 5.* Item 9 — *Treasury Department Name* — This item is of critical importance. It must appear on the funds transfer message in the precise manner as stated to allow for the automated processing and classification of the funds transfer message to Treasury for credit to the Department of Energy. This item is comprised of a rigidly formatted, nonvariable sequence of 28 characters as follows: TREAS NYC/(89000003) DOE NWF

[See Illustration in Original]

*Line 6, 7, and 8. Payment Identification* — The payment identification should be furnished by the remitter in the following manner:

Item 10 — The constant "DOE NUCWASTE FEE" will be inserted.

Item 11 — The month and year the fees were incurred (i.e.; May 80) followed by a slash (/).

Item 12 — The company name is inserted following the slash.

BILLING CODE 6450-01-M

[See Material in original]

Appendix "H"

General Terms and Conditions

1. *Disputes.* A. Except as otherwise provided in this contract, any dispute concerning a question of fact arising under this contract which is not disposed of by agreement shall be decided by the Contracting Officer, who shall reduce his decision to writing and mail or otherwise furnish a copy thereof to the Purchaser. The decision of the Contracting Officer shall be final and conclusive unless within thirty (30) days from the date of receipt of such copy, the Purchaser mails or otherwise furnishes to the Contracting Officer a written appeal addressed to the DOE Board of Contract Appeals (Board). The decision of the Board shall be final and conclusive unless determined by a court of competent jurisdiction to have been fraudulent, or capricious, or arbitrary, or so grossly erroneous as necessarily to imply bad faith, or not supported by substantial evidence. In connection with any appeal proceeding under this clause, the Purchaser shall proceed diligently with the performance of the contract and in accordance with the Contracting Officer's decision.

B. For Purchaser claims of more than $50,000, the Purchaser shall submit with the claim a certification that the claim is made in good faith; the supporting data are accurate and complete to the best of the Purchaser's knowledge and belief; and the amount requested accurately reflects the contract adjustment for which the Purchaser believes the Government is liable. The certification shall be executed by the Purchaser if an individual. When the Purchaser is not an individual, the certification shall be executed by a senior company official in charge at the Purchaser's plant or location involved, or by an officer or general partner of the Purchaser having overall responsibility for the conduct of the Purchaser's affairs.

For Purchaser claims of $50,000 or less, the Contracting Officer must render a decision within 60 days. For Purchaser claims in excess of $50,000, the Contracting Officer must decide the claim within 60 days or notify the Purchaser of the date when the decision will be made.

C. This "Disputes" clause does not preclude consideration of law questions in connection with decisions provided for in paragraph A above; *provided, however,* that nothing in this contract shall be construed as making final the decision of any administrative official, representative, or board on a question of law.

2. *Officials not to benefit.* No member of or delegate to Congress or resident commissioner shall be admitted to any

share or part of this contract, or to any benefit that may arise therefrom, but this provision shall not be construed to extend to this contract if made with a corporation for its general benefit.

3. *Covenant against contingent fees.* The Purchaser warrants that no person or selling agency has been employed or retained to solicit or secure this contract upon an agreement or understanding for a commission, percentage, brokerage, or contingent fee, excepting bona fide employees or bona fide established commercial or selling agencies maintained by the Purchaser for the purpose of securing business. For breach or violation of this warranty, the Government shall have the right to annul this contract without liability or in its discretion to increase the contract price or consideration, or otherwise recover, the full amount of such commission, brokerage, or contingent fee.

4. *Examination of records.* The Purchaser agrees that the Comptroller General of the United States or any of his duly authorized representatives shall have access to and the right to examine any directly pertinent books, documents, papers and records of the Purchaser involving transactions related to this contract until the expiration of three years after final payment under this contract unless DOE authorizes their prior disposition.

5. *Permits.* The Government and the Purchaser shall procure all necessary permits or licenses (including any special nuclear material licenses) and comply with all applicable laws and regulations of the United States, States and municipalities necessary to execute their respective responsibilities and obligations under this contract.

6. *Rights in technical data.* (a) Definitions. (1) "Technical data" means recorded information regardless of form or characteristic, of a specific or technical nature. It may, for example, document research, experimental, developmental, or demonstration, or engineering work, or be usable or used to define a design or process, or to procure, produce, support, maintain, or operate material. The data may be graphic or pictorial delineations in media such as drawings or photographs, text in specifications or related performance or design-type documents or computer software (including computer programs, computer software data bases, and computer software documentation). Examples of technical data include research and engineering data, engineering drawings and associated lists, specifications, standards, process sheets, manuals, technical reports, catalog item identification, and related information. Technical data as used herein do not include financial reports, cost anslyses, and other information incidental to contract administration.

(2) "Proprietary data" means technical data which embody trade secrets developed at private expense, such as design procedures or techniques, chemical composition of materials, or manufacturing methods, processes, or treatments, including minor modifications thereof, provided that such data:

(i) Are not generally known or available from other sources without obligation concerning their confidentiality;

(ii) Have not been made available by the owner to others without obligation concerning its confidentiality; and

(iii) Are not already available to the Government without obligation concerning their confidentiality.

(3) "Contract data" means technical data first produced in the performance of the contract, technical data which are specified to be delivered under the contract, or technical data actually delivered in connection with the contract.

(4) "Unlimited rights" means rights to use, duplicate, or disclose technical data, in whole or in part, in any manner and for any purpose whatsoever, and to permit others to do so.

(b) Allocation of rights.

(1) The Government shall have:

(i) Unlimited rights in contract data except as otherwise provided below with respect to proprietary data properly marked as authorized by this clause;

(ii) The right to remove, cancel, correct or ignore any marking not authorized by the terms of this contract on any technical data furnished hereunder, if in response to a written inquiry by DOE concerning the proprietary nature of the markings, the Purchaser fails to respond thereto within 60 days or fails to substantiate the proprietary nature of the markings. In either case, DOE will notify the Purchaser of the action taken;

(iii) No rights under this contract in any technical data which are not contract data.

(2) The Purchaser shall have the right to mark proprietary data it furnishes under the contract with the following legend, the terms of which shall be binding on the Government:

Limited Rights Legend

This "Proprietary data," furnished under "Contract No. " with the U.S. Department of Energy may be duplicated and used by the Government with the express limitations that the "proprietary data" may not be disclosed outside the Government or be used for purposes of manufacture without prior permission of the Purchaser, except that further disclosure or use may be made solely for the following purposes:

(a) This "proprietary data" may be disclosed for evaluation purposes under the restriction that the "proprietary data" be retained in confidence and not be further disclosed;

(b) This "proprietary data" may be disclosed to contractors participating in the Government's program of which this contract is a part, for information or use in connection with the work performed under their contracts and under the restriction that the "proprietary data" be retained in confidence and not be further disclosed; or

(c) This "proprietary data" may be used by the Government or others on its behalf for emergency work under the restriction that the "proprietary data" be retained in confidence and not be further disclosed. This legend shall be marked on any reproduction of this data in whole or in part.
[FR Doc. 83-3113 Filed 2-3-83; 8:45 am]

BILLING CODE 6450-01-M

107M50

********** Print Completed **********

Time of Request: December 09, 2004 12:55 PM EST

Print Number: 1842:23431650
Number of Lines: 816
Number of Pages: 29

Send To: SMILEY, KEITH
DICKSTEIN SHAPIRO MORIN & OSHINSKY
2101 L ST NW
WASHINGTON, DC 20037-1526